**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL WAMACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 CV 6808** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **WINDSOR PARK MANOR, and** | ) | |
| **COVENANT RETIREMENT** | ) | |
| **COMMUNITIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Paul Wamack filed his amended complaint against Windsor Park Manor and Covenant

Retirement Communities, Inc. alleging violations of the Americans with Disabilities Act, 42

U.S.C. § 12111, *et seq.* ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794(a), and the Family and

Medical Leave Act, 29 U.S.C. § 2611, *et seq.* ("FMLA"). Before the court are defendants'

motions to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). For the reasons set forth below, defendants' motions [#24, #26] will be granted in part

and denied in part.[1]

## BACKGROUND[2]

Paul Wamack, age 53, began working for Covenant as a Maintenance Technician in

Washington in 1992. In April 1999, he relocated to work as Director of Environmental Services

at Windsor Park, which is one of Covenant's locations in Carol Stream, Illinois. He held this

position until his termination in September 2008. Windsor Park and Covenant Retirement are

---

[1] This court has subject matter jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 794a(2), 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b) because Wamack's claims arise from events that occurred in this district.

[2] The following facts are taken from Wamack's amended complaint and attached documents. *See* Fed. R. Civ. P. 10©.

both licensed Illinois corporations that provide retirement and assisted living housing for seniors. Covenant has fourteen locations across the United States, including in Illinois.

Wamack was diagnosed with depression in 2004 and started taking medication and receiving mental health treatment. On February 25, 2008, Wamack decided to leave his position as Director of Environmental Services and resume his old position as Maintenance Technician.

On June 9, 2008, Wamack's psychiatrist, Dr. Ramon Alvarez, recommended that Wamack enter a partial inpatient program at Mercy Provena Hospital to treat major depression. The next day, Wamack informed Windsor Park's Director of Human Resources, Tracey Cook, that he had entered a partial inpatient hospitalization program for depression and that he expected to be on leave for one to four weeks. Cook informed Wamack that he would be eligible for leave under the FMLA and that she would send him information to apply for short-term disability benefits. Wamack entered the inpatient program, and his FMLA leave began on June 10, 2008.

On June 25, 2008, Wamack informed Cook that he was still in the partial inpatient program and that he had not yet been released to return to work. Wamack was released from the program on July 3, 2008, but was not yet released for return to work. On July 15, 2008, Dr. Alvarez examined Wamack and determined that he still should not be released for work.

On July 15 and August 12, 2008, Wamack called Cook and told her that he needed to remain on FMLA leave and could not return to work. Wamack called Cook again on August 22 and told her that he would need to remain on leave through September 12, 2008, which was the date of his next appointment with Dr. Alvarez. Cook failed to inform Wamack that his benefits under the FMLA would soon expire.

On September 4, 2008, Windsor Park allegedly mailed Wamack a letter explaining that Wamack's FMLA leave had expired on September 2, 2008 and that as of September 3 Wamack had been placed on personal leave "with the anticipation that [he] might be able to return to work

without significant restrictions within a reasonable period of time." (Amend. Compl., Ex. C.)
The letter states that as of September 8, 2008, Wamack would be placed on "inactive" status
with Windsor and that his position would either be filled or eliminated. *Id.* Wamack would be
permitted to apply and be considered for reinstatement with Windsor when he was "medically
able to work." (*Id.*) The letter also informed Wamack that his accrued paid time off would be
paid out to him on his next paycheck. (*Id.*)

Wamack never received the letter and was not informed of its contents until September
23, 2008, during a phone call with Cook. Prior to this call, Wamack believed that his paid time
off would be available to him as additional leave because he had accrued over 190 hours for paid
time off. Cook informed him, for the first time, that defendants planned to hire someone else for
his position and that he could not return to work without obtaining a release from his physician.
Wamack requested temporary part-time work from Windsor Park and Cook stated that she
would inquire into the request and call Wamack back.

On September 25, 2008, Cook called Wamack and told him that he was being fired
because he did not have a release without restrictions, that his position would be filled, and that
defendants were "moving on." On September 30, Dr. Alvarez released Wamack to return to
work without restrictions.

Wamack filed a Title VII charge of discrimination against Windsor Park on October 20,
2008. (Corrected Ex. A to Amend. Compl., Dkt. #35.) The particulars of Wamack's charge
state:

> I began my employment with Respondent in 1992. My most recent position was
> Maintenance Technician. During my employment, I took a leave of absence
> related to my medical condition. Respondent refused to rehire me upon
> completion of leave. I believe that I have been discriminated against because of
> my disability, in violation of the Americans with Disabilities Act of 1990, as
> amended.

(*Id.*)  Wamack checked a box on the charge indicating that he had been discriminated against on the basis of "disability" and stated that the latest date of discrimination took place on September 9, 2008.

The EEOC issued Wamack a Notice of Right on August 4, 2010.  (Amend. Compl., Ex. B.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997).  In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Dixon v. Page,* 291 F.3d 485, 486 (7th Cir. 2002).  In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed .2d 929 (2007).  At the same time, the plaintiff need not plead legal theories.  *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010).  Rather, it is the facts that count.

Defendants assert that Wamack's amended complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  In support, they assert that Wamack failed to exhaust his administrative remedies before the EEOC.  Failure to file the proper EEOC charge is properly raised in a motion to dismiss for failure to state a claim, not as a motion to dismiss for lack of subject matter jurisdiction. *See Cheek* v. *W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  Accordingly, the court considers the entirety of defendants' motions according to the legal standard for a Rule 12(b)(6) motion to dismiss.

## ANALYSIS

### I.     ADA Claims (Count I)

Count I of Wamack's amended complaint alleges that Windsor Park violated the ADA by terminating him and failing to provide reasonable accommodations for his disability.  Windsor Park moves to dismiss Count I to the extent that it alleges that it failed to make reasonable accommodations, on the grounds that this claim was not raised before the EEOC.[3]

Before a plaintiff may file suit in federal court under the ADA, he must (1) file a timely charge with the EEOC, and (2) receive a right to sue letter from the EEOC.  *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b), (e), & (f).  After receipt of the right to sue letter, a plaintiff has 90 days to bring suit in federal court.  42 U.S.C. § 2000e-5(f)(1).  These statutory requirements are deemed preconditions, similar to statutes of limitations and, if not satisfied, are grounds for dismissal unless waived by the defendant.  *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982); *Gibson* v. *West*, 201 F.3d 990, 993 (7th Cir. 2000).

Within this context, a plaintiff may not bring a claim in federal court that was not originally included in the EEOC charge.  *Cheek,* 31 F.3d at 500 (citing *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)).  To determine whether a claim was adequately brought to the attention of the EEOC, courts consider whether the claim is "like or reasonably related" to the allegations in the plaintiff's EEOC charge and could reasonably be expected to grow out of an investigation of the charge.  *Sitar* v. *Indiana Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (citing *Jenkins* v. *Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*)).  This means that "the EEOC charge and the

---

[3]  Convenant also moves to dismiss Count I on the grounds that it was not named in Wamack's EEOC charge.  *See Eggleston* v. *Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981) (party not named in EEOC charge cannot be defendant in complaint unless the party was given the opportunity to participate in EEOC conciliation proceedings).  Wamack, in his response, clarifies that Count I alleges an ADA claim only against Windsor Park, and not Covenant.

complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*"
*Cheek*, 31 F.3d at 500. These requirements ensure that the employer is notified of the conduct in
the employee's complaint and gives the employer the opportunity to seek conciliation without
resort to the courts. *Rush* v. *McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Under the ADA, a claim of disparate treatment due to unlawful termination is separate
and distinct from a claim for failure to accommodate a known disability. *Green* v. *Nat'l Steel
Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). A disparate treatment claim is based on
the premise that an employer took an adverse employment action, such as termination, based on
the employee's actual or perceived disability. *Weigel* v. *Target Stores*, 122 F.3d 461, 463–64
(7th Cir. 1997) (citing 42 U.S.C. §§ 12112(a), 12112(b)(3) and (4)). A reasonable
accommodation claim, on the other hand, looks at an employer's failure to make
accommodations to the known physical or mental limitations of an otherwise qualified
individual. *Id.* (citing 42 U.S.C. § 12112(b)(5)(A)). Thus, an employee cannot always expect
that a failure to accommodate claim will arise out of an investigation that an employee was
unlawfully terminated because of a disability. *Green*, 197 F.3d at 898.

Wamack's EEOC charge alleges that Windsor Park discriminated against him by
"refus[ing] to rehire him upon completion of leave." His amended complaint alleges that
Windsor Park discriminated against him by conditioning his reinstatement upon obtaining a
doctor's release, denying his request for a temporary part-time schedule and non-FMLA leave,
and terminating his employment without considering possible reasonable accommodations for
Wamack's disability. Though Wamack's EEOC charge does not explicitly use the words
"failure to reasonably accommodate," the accommodation and discharge claims in this case arise
from the same core facts. Windsor Park's termination was, in effect, a refusal to provide
Wamack with the accommodation he sought, and therefore the allegations in his amended
complaint are reasonably related to the allegations in his EEOC charge. *See Davis* v. *Am. Drug*

*Stores, Inc.*, No. 01 C 3704, 2003 WL 21149063, at *3 (N.D. Ill. May 19, 2003)

(accommodation claim that was "mirror image" of discharge claim was viable even though it

was not included in EEOC charge).[4]

      Windsor Park argues that the court is bound by *Green* v. *National Steel*, but that case is

distinguishable on its facts. In *Green*, the Seventh Circuit held that an employee was barred

from claiming that her employer had failed to accommodate her disability by failing to provide a

suitable desk chair and light dimmer and that her employer prevented her from parking in a

handicapped parking space. 197 F.3d at 898. These claims were unrelated to the facts alleged in

her EEOC charge, which simply stated that she had been terminated due to her disability. *Id.* at

897. Because of these differences, the court of appeals concluded that an investigation into the

plaintiff's termination would not likely yield facts relating to the modification of her work

environment. Wamack's amended complaint, in contrast, alleges facts that are "inextricably

intertwined" with the allegations in his EEOC charge. *See Davis*, 2003 WL 21149063, at *3

(distinguishing *Green* on similar grounds); *see also Mudgett* v. *Centegra Health Sys., Inc.*, No.

04 C 6212, 2006 WL 1806390, at *5 (N.D. Ill. Jun. 27, 2006) (noting the difficulty in discerning

a bright line from *Green* and concluding that "[r]ather than parsing the various cases for factual

similarities and differences, it is best to measure the facts here against the constituent Seventh

Circuit direction to determine whether the charge and complaint talk about the same conduct and

the same involved individuals"). He alleges that Windsor Park failed to provide a reasonable

accommodation specifically by terminating him without taking his requests for accommodation

---

[4] In addition, in his intake questionnaire Wamack was asked to "[d]escribe the assistance or change in working condition requested," to which he responded, "I asked if I would be able to work half days for a week then return to full time." (Def.'s Mot. to Dismiss Ex. 1 at 9.) The Seventh Circuit has suggested that written "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Swearnigen-El* v. *Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (quoting *Vela* v. *Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) and limiting the holding of *Novitsky* v. *Am. Consulting Eng'rs, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) to its facts). If the intake questionnaire is considered, it is plain that Wamack was attempting to make a reasonable accommodation claim, but the court does not consider it necessary to consider the document to have reached its conclusion.

into account. Under these circumstances, unlike in *Green*, an investigation into Wamack's termination would likely lead to an investigation of whether Windsor Park failed to accommodate his disability. Because the allegations in Wamack's amended complaint are "like or reasonably related" to the allegations in his EEOC charge, Windsor Park's motion to dismiss Wamack's claim of failure to provide reasonable accommodation will be denied.

## II.    FMLA Claims (Counts III and IV)

Covenant moves to dismiss Wamack's FLMA claims on the grounds that the amended complaint does not establish that Covenant was his employer under the FMLA. Covenant argues that even though the amended complaint alleges that Covenant was Wamack's employer, the court must disregard these allegations because Wamack's EEOC charge, intake questionnaire, and original complaint, filed *pro se*, allege that he was only employed by Windsor Park. In support, Covenant cites the "well-settled" rule that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). This rule only applies, however, when the court is convinced of the reliability of the exhibits attached to the complaint and the exhibits represent the truth of the matter at issue. *Id.* For example, a written contract attached to a complaint may defeat the plaintiff's attempt to rely on the Statute of Frauds, or an attached prospectus may defeat the plaintiff's allegation that the prospectus contained misleading statements. *Id.* at 455–56. Wamack's EEOC charge, intake questionnaire, and *pro se* complaint do not establish whether Wamack was in fact employed by Covenant. Nor do they form the basis for Wamack's FMLA claims. *Cf. id.* at 455 ("When the document itself forms the basis for the allegation, the document must be examined as a whole."). Indeed, Wamack was not even required to exhaust his administrative remedies before bringing an FMLA claim. Covenant's argument that the allegations in Wamack's *pro se* charge and original complaint should "trump" the allegations in his amended complaint is patently without merit.

Having dispensed with the Covenant's primary objection to the amended complaint, it is clear that Wamack's allegations satisfy Rule 8's notice pleading standards. The amended complaint alleges that Wamack was employed by both Windsor Park and Covenant and that Windsor Park and Covenant were affiliated companies that operated assisted living facilities in Illinois. In addition, the amended complaint alleges that both companies notified him that he had been placed on inactive status, that Tracey Cook informed him on September 23, 2008 that "defendants" were filling his position, and that Cook told him that he was terminated because "defendants" were moving on. Wamack has also attached a letter dated September 4, 2008, notifying him of his inactive status, and the letterhead reads: "Windsor Park Manor: A Covenant Retirement Community." (Amend. Compl. Ex. C.) In addition, he attached a form titled "Response to Request for Family or Medical Leave" and the name "Covenant Retirement Communities" appears at the top of the form above Cook's name. (Amend. Compl. Ex. D.) The amended complaint's allegations, taken together with the referenced exhibits, are sufficient to state a claim against Covenant under the FMLA. *See Radimecky* v. *Mercy Health Care & Rehab. Ctr.*, No. 00 C 2889, 2000 WL 1644510, at *3 (N.D. Ill. Oct. 26, 2000) (considering whether plaintiff had properly alleged single-employer liability under the FMLA and noting that "a factual inquiry is not appropriate in this 12(b)(6) motion to dismiss, in which this court must not only accept plaintiff's well-pleaded allegations as true, but also must make all reasonable inferences in favor of plaintiff from those allegations"); *see also Papa* v . *Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir. 1999) (at summary judgment stage, one rationale for joint employer liability is that parent company can be held liable for its own discriminatory acts, such as

directing the discriminatory practice of the subsidiary).[5]  Accordingly, Covenant's motion to dismiss Counts III and IV will be denied.

## III.    Rehabilitation Act Claims (Count II)

Count II of Wamack's amended complaint alleges violations of Section 504 of the Rehabilitation Act.  Windsor Park and Covenant move to dismiss these claims as time-barred under the Act's statute of limitations, which is the two-year statute of limitations governing personal injury suits in Illinois.  *See Cheeney* v. *Highland Comm. College*, 15 F.3d 79, 81–82 (7th Cir. 1994).  Wamack concedes that he failed to file his Rehabilitation Act claims within the applicable statute of limitations.  Accordingly, defendants' motion to dismiss Count II will be granted.

**CONCLUSION AND ORDER**

For the reasons stated above, Windsor Park and Covenant's motions to dismiss [# 24, 26] Wamack's amended complaint are granted in part and denied in part.  Count II is dismissed with prejudice.  Defendants should answer the amended complaint by January 17, 2012.

Dated: Dec. 27, 2012                                        Enter:

                                        JOAN HUMPHREY LEFKOW
                                        United States District Judge

---

[5] Covenant argues that according to *Radimecky* a plaintiff must always allege that two companies are affiliated and have a parent-subsidiary relationship in order to establish single employer liability.  In *Radimecky*, unlike here, the complaint did not allege that the plaintiff was employed by one of two defendant corporations.  *See* 2000 WL 1644510, at *2.  It merely asserted that one corporation was the parent of the other.  Under these unusual circumstances, the court was compelled to consider the various situations in which affiliated parent-subsidiary corporations can be considered a single employer under the FMLA.  *See id.*  Had the plaintiff in *Radimecky* alleged, like Wamack, that he was jointly employed by both companies and that they acted in concert by engaging in discriminatory conduct, the court's analysis might have been different.